J. M. STONE ET AL., RAILROAD COMMISSIONERS, *v.* NATCHEZ, JACKSON AND COLUMBUS RAILROAD COMPANY.

1. RAILROAD SUPERVISION. *Fixing charges. Rights granted by charter. Commission.*

Where a charter granted by a State to a railroad company authorizes the company to "fix, regulate, and receive tolls and charges for transportation of persons and property," there is annexed to such grant the implied condition that the tolls and charges fixed shall be reasonable, and the legislature retains the power to secure, through a commission established for the purpose, conformity by the company to the standard of reasonableness in its rates.

2. SAME. *Reasonableness in rates. Final test thereof.*

The final test of the reasonableness of such charges is not with the commission, but with the judiciary of the State. The fixing of rates by the commission is not conclusively, but only *primâ facie*, correct.

APPEAL from the Chancery Court of Hinds County.

HON. E. G. PEYTON, Chancellor.

The bill in this case, filed by the Natchez, Jackson and Columbus Railroad Company against J. M. Stone and others, Railroad Commissioners, like that in *Yazoo and Mississippi Valley Railroad Co. v. Stone et al., Railroad Commissioners, ante* 607, complains that the act of March 11, 1884, entitled "An act to provide for the regulation of freight and passenger rates on railroads in this State, and to create a commission to supervise the same, and for other purposes," is unconstitutional, and that its enforcement will interfere with the exercise and enjoyment by the complainant of its charter rights and privileges ; and the prayer is for an "injunction directed to the defendants, commanding them to refrain absolutely from any further or other proceedings for the enforcement of the said act of the legislature against your orator, or from molesting or interfering in any way with your orator." For a statement of the provisions in the act of March 11, 1884, complained of, see *Stone et al. v. Railroad Co., ante* 607. The only provision of complainant's charter considered by this court is set forth in the opinion.

The appeal herein was taken by the defendants from a decree overruling a demurrer filed by them to the complainant's bill.

*J. W. C. Watson,* for the appellants.

Opposing counsel claim that the railroad company they represent has, by a charter contract, the right to regulate its charges for the transportation of freights and passengers. This claim, of course, is based on the contract clauses of the Federal and State constitutions.

The Supreme Court of the United States and State supreme courts have often held corporation charters and other legislative acts to be contracts in the constitutional sense of that term. But to these numerous rulings the same courts have allowed many exceptions, and the question as to the power of a State legislature to bargain away the right of the State to regulate railroad charges is still an open question before the Supreme Court of the United States, and we submit that that court of final authority never will decide that one legislature has the power to bind its successors by a contract to that effect.

We do not " contravene the established principle that the legislature of a State may make contracts on many subjects which will bind it and will bind succeeding legislatures, so that its provisions can neither be repealed nor its obligation impaired. The examples are numerous where this has been done and the contract upheld."

" The denial of this power in the present instance rests upon the ground that the power of the legislature intended to be suspended *is one so indispensable to the public welfare that it cannot be bargained away by contract.* It is that well-known but undefined power called the police power." *Butchers' Union Co.* v. *Crescent City Co.,* 111 U. S. 750.

This decision, it is true, was made in a case involving the health of the city of New Orleans, but it enunciates a principle which is applicable to the present case. It is so indispensable to the public welfare that the legislative power to regulate railroad charges should not be bargained away that we hold that under the police power of the States it cannot be bargained away. The courts have uniformly held that State legislation regulating or affecting railroad corporations was an exercise of the police powers of the State, and many laws restricting and really impairing what would be the

rights of railroads under their charters, were they in all respects irrepealable, have been upheld.

Pierce on Railroads says :

" The State may, in the exercise of its police power, require reports, the numbering of cars, the fixing and posting of routes, a slow rate of movement, the disuse of steam in cities, the ringing of a bell and blowing of a whistle on approaching highways, the stationing of a flagman at highway crossings, the lighting of the railroads in cities and villages, the stopping of trains for a certain time at stations, and affix penalties or a liability for injuries in case of non-compliance." *State* v. *Southern Pacific Railroad Co.*, 24 Tex. 80 ; *Frankford and P. Pass. Railroad Co.* v. *Philadelphia*, 58 Pa. St. 119 ; 63 Ill. 91 ; 66 Ill. 43 ; 67 Ill. 113 ; 34 Ind. 392 ; 38 Wis. 463 ; 41 Wis. 44. Many other legislative regulations of railroads not affecting the public health or morals have been sustained by the courts. Pierce on Railroads 463–65 ; *Railroad Co.* v. *Hamersly*, 104 U. S. 1.

The case of *Railroad Co.* v. *Fuller*, 17 Wall. 560, was this :

" A statute of *Iowa* " in relation to the duties of railroad companies, passed in 1862, enacts :

" In the month of September, annually, each railroad company shall fix its rates of fare for passengers, and freights for transportation of timber, wood and coal per ton, cord, or thousand feet, per mile, also its fare and freights per mile for transporting merchandise and articles of first, second, third, and fourth grades of freight."

" And on the first day of October following shall put up at all the stations and depots on its road a printed copy of such fare and freights, and cause a copy to remain posted during the year."

" For willfully neglecting so to do, or for receiving higher rates of fares or freights than those posted, the company shall forfeit not less than one hundred dollars or more than two hundred dollars to any person injured thereby and suing therefor."

This legislation was sustained by the Supreme Court of the United States, the court saying :

" If the requirements of the statute here in question were, as con-

tended by the counsel for the plaintiff in error, *regulations of commerce,* the question would arise whether, regarded in the light of the authorities referred to and of reason and principle, they are not regulations of such a character as to be valid until superseded by the paramount action of Congress. But as we are unanimously of the opinion that they are merely police regulations, it is unnecessary to pursue the subject." 17 Wall. 570.

In the case of *The Beer Company* v. *Massachusetts,* 97 U. S. 25, on the faith of a charter a very large outlay of capital had been made; yet a subsequent statute of a prohibitory character denied to the corporation certain privileges which its charter conferred upon it, and the case was taken to the Supreme Court of the United States on the ground that the obligation of the charter contract had been impaired; but the court, speaking by Mr. Justice Bradley, held that:

" Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health, *and property of the citizens,* and to the preservation of good order and public morals. The legislature cannot, by any contract, divest itself of the power to provide for these objects. They belong emphatically to that class of objects which demand the application of the maxim, " *Salus populi suprema lex,*" and they are to be attained and provided for by such appropriate means as the legislative discretion may devise. That discretion can no more be bargained away than the power itself." Ib. 33.

The principles of this *Beer Company Case* are re-stated and reaffirmed in the case of the *Fertilizing Company* v. *Hyde Park,* 97 U. S. 659; see also *Stone* v. *Mississippi,* 101 U. S. 814.

*J. W. C. Watson* also made an oral argument.

*Nugent & McWillie,* for the appellee.

The power or right to regulate tolls or tariffs of charges for transportation of persons and property is a franchise indispensable to the successful operation of a railroad. It goes to the very constitution of the corporation and is extremely beneficial in its opera-

tion. Without it, railroad companies would be completely at the mercy of the legislature, and such rates could be fixed for them that it would be impossible for them to operate their railways at all. 94 U. S. 179. *The* franchises of the corporations are the privilege of operating their roads and fixing and taking tolls for the service. Without them no railroad could be built, no capital stock sold, no bonds floated. The one is co-extensive with the other, and both are attributes of sovereignty. The right to levy and collect tolls is the revenue-producing power of the corporations, and to be available must be conditioned of certainty, regularity, and precision without the domination or direction of extraneous power. The railway companies of the State must have this power or they cannot live. *Thorpe* v. *Ry. Co.*, 27 Vt. 144, 146; *State* v. *Noyes*, 47 Me. 189; *Olcott* v. *Supervisors*, 17 Wall. 695; *Perrine* v. *Canal Co.*, 9 How. 184.

We are not without illustrations of the point we are now presenting, and we call attention to the following: A legislative grant to an existing turnpike corporation of the right to increase its tolls is a contract which cannot be impaired by after legislation. *Derby Turnpike Co.* v. *Parks*, 27 Am. Dec. 700; see *Pingry* v. *Washburn*, 15 Am. Dec. 676; *Backus* v. *Lebanon*, 3 Am. Dec. 466; 42 Am. Dec. 728. Any act having the effect to abridge or restrict any power or privilege vested in a corporation by its charter, which is material to the beneficial exercise of the franchise granted, and which must be supposed to have entered into the consideration for the acceptance of the charter by the corporators, is an impairing of the obligation of the contract within the prohibition of the constitution. *Railroad Co.* v. *Bowen*, 13 Am. Law Reg. 174. This was said of a law that prohibited a railroad company, having by its charter the power to regulate its tolls, from charging at a greater rate per mile for carriage from place to place within the State than for similar carriage through or beyond the State, no such power to regulate charges having been reserved in the charter. The court use this strong language at the close of its opinion: "We are of opinion that inasmuch as the act under consideration assumes the absolute power to regulate and control the exercise of a corpo-

rate right which was granted to this company as a part of its franchise, without any reserved power of such future regulation by the legislature, it is *not a legitimate exercise of the State police power*, but is in substance and effect an alteration of the charter, and materially impairs the obligation of the contract in the sense of the constitutional prohibition as interpreted by the supreme court." Page 185.    In that case the effort was made to refer the law to the police power of the State, but the answer to the proposition is stated by the court : " The police power of the State comprehends all those general laws of internal regulation which are necessary to secure the peace, good order, health, and comfort of society.    *    * The legislature may at all times regulate the exercise of the corporate franchise by general laws, passed in good faith, for the legitimate ends contemplated by the State police power,    *    * but it cannot, under color of such laws, destroy or impair the franchise itself nor any of those rights and powers which are essential to its beneficial exercise.    Thus, acts regulating the mode of carriage of passengers with a view to their safety, or regulating the speed of travel through towns or cities, or prescribing certain precautions for the public safety at crossings, or requiring the erection of fences, etc., are the proper exercises of the power of police regulation.    Such acts leave the franchise unimpaired, and simply regulate the exercise of it in some particulars plainly essential to the general safety, health, or comfort of society.    But quite different are acts which directly touch the constitution of the corporation or abridge or modify any of those corporate powers which are essential to the very ends of its creation ; such powers, for example, as the right to operate a railroad at all, *the right to take tolls* or fares and freights, or to adjust their tariff of such charges.    These are not police regulations, but are in substance and effect amendments of the charter."    Page 182.    In thus holding, the court referred to the case of *Thorpe* v. *Ry. Co., supra*, in which it was said : " The privilege of operating the road, or *taking tolls* or freight or fare, is the essential franchise conferred.    Any act essentially paralyzing this franchise, or destroying the profit therefrom arising, would no doubt be void."    Page 183.

The charter of a railroad company conferred upon it the power to regulate its tolls for a certain length of time. During that time the legislature passed an act to regulate the same tolls. Held unconstitutional. *Sloane* v. *Pacific Ry. Co.*, 21 Am. Rep. 397. The court says on page 400 : " It is not contended in this case that a legislature may not part with the right of taxation—one of the most important attributes of sovereignty. * * * The right to regulate the tolls on a road is a matter of inferior importance to the State, and if the right of taxation may be abandoned, it is difficult to perceive why the right of regulation of tolls may not be transferred to the corporation."

Without the charter grant of the power or right, a corporation railway company could not exact toll. As said in the case of *Railroad Co.* v. *Bowen, supra*, " the power of the company to adjust its tariff of charges by its own officers, according to their views of the necessities of business and of justice to the public, having been confided in the franchise granted to the company without any right of legislative supervision or control, the legislature of the State had no right to assume control of such regulations and undertake to fix by law different rates from those fixed by the company. The power thus granted to the company was essential to the enjoyment of the franchise, and must be presumed to be the consideration for which the corporators accepted the charter." *Hamilton* v. *Keith,* 5 Bush. 458 ; *The Middlesex T. Co.* v. *Freeman,* 14 Conn. 85 ; *The Enfield Toll Bridge Co.* v. *Ry. Co.,* 17 Conn. 40 ; *Attorney General* v. *Ry. Co.,* 35 Wis. 437, 585, 590, 592.

*W. L. Nugent,* of counsel for the appellee, argued the case orally.

CAMPBELL, C. J., delivered the opinion of the court.

The views announced in *Railroad Commissioners* v. *Yazoo and Miss. Valley R. R. Co., ante* 607, dispose of all of the objections of the appellee to the act creating the railroad commission, except as relates to the constitutional inhibition upon the State to pass any law impairing the obligation of contracts.

The appellee is authorized by its charter " from time to time to fix, regulate, and receive tolls and charges by them to be received

for transportation of persons and property." Annexed to every such grant is the implied condition that the charges shall be reasonable, because that is the limit of right imposed by the common law, and as the power of the corporation is to be exercised in subordination to this tacit condition, it is competent for the legislature to establish an agency to secure conformity by its creatures to the standard of reasonableness. The appellee is not denied the right to fix, regulate, and receive just and proper charges for transportation. That right is secured to it by its charter, and is not infringed by the act creating a railroad commission. It remains unimpaired. All that has been attempted is to secure conformity to what is reasonable and proper. The creation of a public agency to stand between the railroad companies and those dealing with them, to see that the obligation of the former to be reasonable in their charges is duly observed, is not an infraction of any right. The final test of reasonableness of rates is not with the railroad commission, but, as before, with the government through its judiciary. Fixing rates by the commission is not final and conclusive against a railroad company. It is only *primâ facie* correct and may be tested in the courts. If the action of the commission is just it should prevail. If it is not, it may be assumed that it will not. Of that none should complain. The concession made in the bill of the appellee of the right of judicial control to prevent extortion and unjust discrimination is an admission of the right of governmental control; and if the State can control or supervise at all, it may select the agency through which to exert its right.

The appellee is not subject to the absolute control of the railroad commission or of the legislature as to rates for transportation. It has rights which must be respected, and there has been no invasion of them. They are inviolate and inviolable.

This company must be permitted, as authorized by its charter, to fix, regulate, and receive tolls and charges; but this creature of the State must submit to the lawful authority of its creator and protector to supervise it, so as to guard against any abuse by it of its franchise while it is protected in its fullest enjoyment. Within the limits of its chartered rights it is safe from interference, but it has

no right to escape the visitatorial power of the State to ascertain if it keeps within these bounds. Corporations, like natural persons, must yield to the authority of the State to govern ; and while they may justly claim that they shall not be despoiled of their chartered rights, they cannot be justified in a claim of immunity from the operation of such reasonable regulations as the State may adopt for their government in conformity to their charters.

*Decree reversed and bill dismissed.*