# STONE & Others *v.* ILLINOIS CENTRAL RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF MISSISSIPPI.

An act of incorporation of a railway company which provides that the president and directors may "adopt and establish such a tariff of charges for the transportation of persons and property as they may think proper," and the same "alter and change at pleasure," does not deprive the State of its power, within the limits of its general authority as controlled by the Constitution of the United States, to act upon the reasonableness of the tolls and charges so adopted and established.

A corporation of one State leasing and operating a railroad in another State is, as to the leased road, subject to local legislation to the extent to which the lessor would have been subject had there been no lease.

This was a bill in equity praying for an injunction to restrain the railroad commissioners in Mississippi from enforcing

the act referred to in *Stone* v. *Farmers' Loan & Trust Co., ante,* 307, against the Illinois Central Railroad Company as the lessee of the Chicago, St. Louis and New Orleans Railroad, in the State of Mississippi. The bill was demurred to. After the demurrer was overruled, the bill was taken as confessed, and an injunction was granted. The defendant appealed to this court. The facts which make the case are stated in the opinion of the court. The case was argued with *Stone* v. *Farmers' Loan & Trust Co., ante,* 307, and *Stone* v. *New Orleans & Northeastern Railroad Co., post,* 352, substantially the same questions being involved in the three cases.

*Mr. John W. C. Watson* for appellants.

*Mr. James Fentress* for appellee, in addition to the general line of argument in the previous case, presented the following facts as specially applicable to the lines of railway for which he appeared.

The subject of a continuous railway connection from Lake Michigan to the Gulf early occupied the attention of Congress. On May 3, 1848, a bill passed the Senate to connect the upper and lower Mississippi with the great lakes at Chicago. In 1850 the subject was again before Congress, and on the 20th September of that year an act was passed "granting the right of way and making a grant of land to the States of Illinois, Mississippi and Alabama, in aid of the construction of a railroad from Chicago to Mobile." 9 Stat. 466. This act was advocated by Mr. Clay, Mr. Cass, Mr. Seward, Mr. King, Mr. Crittenden, and Mr. Benton. The several States legislated in aid of this as an inter-state railroad, to be dedicated to commerce among the States.

In 1853 Louisiana incorporated the New Orleans, Jackson and Great Northern Railroad Company for the purpose of making "a continuous line of communication between New Orleans and the northern and western portions of the Confederacy."

On the 11th March, 1852, the legislature of Mississippi enacted that the construction of the same railroad "from the city of New Orleans, running through the State of Mississippi,

. . . is deemed a work of great public importance . . . and should be encouraged by legislative sanction," and required the governor, on learning of the incorporation of the company in New Orleans, to issue a proclamation "declaring said company capable of entering on the territory of Mississippi," "for the purpose of constructing and extending their works."

The legislature of Tennessee, on the 25th February, 1852, granted the company the right of way through that State. The preamble to the act recited as follows: "Whereas, by resolutions adopted by a railroad convention begun and held on the 6th of April, A. D. 1851, at the city of New Orleans, in the State of Louisiana, it appears to this General Assembly that the rights of way and charter for a railroad to extend northward from said city of New Orleans through a part of the States of Louisiana, Mississippi, Tennessee and Kentucky to the Ohio River, having in view to connect the same with the proposed great North and South Central Railroad of Illinois, are earnestly solicited from the legislatures of the various States through which it is to pass; and also in which said resolutions the city of New Orleans did therein, through its representatives, pledge itself for a very liberal aid in the construction of said railroad, and whereas, it is deemed a matter of vital importance to this State that a direct communication by railroad to the Gulf of Mexico and the Great Northern Lakes be established, Be it enacted," etc.

Kentucky took similar action, and Illinois authorized the building of a railroad from the lakes to a junction on the Ohio River, and the connecting of this road when built with the line south of the river as a through line.

In order to hasten the completion of this inter-state railroad, Mississippi incorporated the Mississippi Central Railroad Company, to construct that part of the through line in that State which ran from Canton northwardly; and Tennessee created the Mississippi Central and Tennessee Railroad Company to continue the extension. The companies thus created were authorized by their respective charters to consolidate into one company. The legislature of Kentucky authorized the extension through that State by an act reciting that it was a "cor-

poration chartered by the joint legislatures of Mississippi and Tennessee." Mississippi recognized and legalized the consolidation after it had taken place, by an act reciting that " it was contemplated when said contract was made, in order to fully secure the advantages of. said continuous line of railroad, and facilitate the operations thereof, that said New Orleans, Jackson and Great Northern. Railroad Company and said Mississippi Central Railroad Company might be consolidated into one corporation."

And Louisiana passed an act reciting the last named act of Mississippi, also authorizing them " to amalgamate and be consolidated," and it was provided that such consolidated company " shall have, possess and enjoy in perpetuity all the rights, powers, franchises, privileges and immunities originally conferred by law on either of said companies in their several acts of incorporation or the amendments thereto."

That part of this inter-state railroad from New Orleans, Louisiana, to Canton, Mississippi, was built by. the New Orleans, Jackson and Great Northern Railroad Company; and that part from Canton, Mississippi, to the Ohio River was built by the Mississippi Central Railroad Company. Becoming insolvent, both roads were sold by decrees of the United States courts of Louisiana, Mississippi, Tennessee and Kentucky. The purchasers were organized into corporations and consolidated the two companies, under the name of the Chicago, St. Louis and New Orleans Railroad Company, which was by name chartered by each of said States, and granted all the rights, powers, privileges, liberties and immunities of the New Orleans, Jackson and Great Northern Railroad Company and the Mississippi Central Railroad Company.

The Chicago, St. Louis and New Orleans Railroad Company leased their lines, thus acquired, to the appellee, which now operates over 2000 miles of railroad, extending into six different States, and is operating part of that railroad in Mississippi. The railroad commission act of that State, if enforced, would control the operation in Iowa, Wisconsin, Illinois, Kentucky, Tennessee and Louisiana, as well as in Mississippi. The language is plain and unambiguous. No matter where else it may

# RAILROAD COMMISSION CASES. 351

Opinion of the Court in Stone *v.* Illinois Central Railroad Co.

run, if the company is operating a railroad in Mississippi, the act covers it all.

*Mr. W. P. Harris* and *Mr. J. B. Harris* also for appellee.

Mr. Chief Justice Waite delivered the opinion of the court.

This suit, like that of *Stone* v. *The Farmers' Loan and Trust Co.*, just decided, *ante*, 307, was brought to restrain the railroad commission from enforcing the railroad supervision act of Mississippi against a corporation operating a railroad in that State. The railroad in Mississippi forms part of a line from New Orleans through Louisiana, Mississippi, Tennessee, and Kentucky to a point on the Ohio River opposite Cairo, Illinois, where it connects with the Illinois Central Railroad, extending to Chicago. The entire line is now owned by the New Orleans, St. Louis and Chicago Railroad Company, a corporation formed by the consolidation of the several corporations created by the different States through which the road runs, for the purpose of securing its construction and operation for inter-state traffic, as well as for transportation within the limits of the several States.

The whole road from Cairo to New Orleans has been leased to the Illinois Central Railroad Company, an Illinois corporation, and is now operated by that company, much the largest part of its business being of an inter-state character.

The Mississippi charter, under which the road is now owned and operated in that State, provides:

"That the president and directors be, and they are hereby, authorized to adopt and establish such a tariff of charges for the transportation of persons and property as they may think proper, and the same to alter and change at pleasure."

This is now part of the charter of the consolidated company in Mississippi. In all other respects the material facts in this case are the same as those in that just decided. Relief is also asked on the same grounds. The court below granted the injunction prayed for, and this appeal was taken for a review of a decree to that effect.

This case comes clearly within the rulings in the other. There is nothing here any more than there to show an intention

by Mississippi to exempt the corporation in that State from proper legislative control, and the Illinois corporation, by going into Mississippi to operate a railroad there, subjected itself to such local legislation as would have been applicable to the corporation owning the road, if no lease had been made. As a corporation of another State, it has no other privileges in Mississippi than such as belong to the corporation whose road it runs.

> *The decree of the Circuit Court is reversed on the authority of Stone v. Farmers' Loan and Trust Co., and the cause is remanded, with directions to dismiss the bill.*

MR. JUSTICE FIELD dissented from the opinion of the court and the judgment in this case for the reasons expressed in his dissent in *Stone* v. *Farmers' Loan and Trust Co., ante,* 342.

MR. JUSTICE HARLAN also dissented for the reasons expressed in his dissent in the same case, *ante,* 337.

MR. JUSTICE BLATCHFORD did not sit in this case or take any part in its decision.