# CASES ARGUED AND DECIDED

—— IN THE ——

# SUPREME COURT OF MISSISSIPPI,

—— AT THE ——

## MARCH TERM, 1901.

---

MISSISSIPPI RAILROAD COMMISSION *v.* GULF & SHIP ISLAND RAILROAD COMPANY.

1. CHANCERY COURT. *Penalties.*

    A court of chancery will not ordinarily enforce penalties.

2. SAME. *Jurisdiction. Railroad commission. Code* 1892, § 4286.

    Code 1892, § 4286, authorizing the state railroad commission to apply to the circuit or chancery court for aid in the enforcement of obedience to its process, and to compel compliance with the law and its lawful orders, decisions and determinations, does not affect the jurisdiction of courts, but directs resort to them according to their established jurisdiction.

3. GULF & SHIP ISLAND RAILROAD COMPANY. *Charter. Judicial notice. Laws* 1882, *p.* 849 *et seq.*

    The courts will take judicial notice of the charter of the Gulf & Ship Island Railroad Company, the same having been enacted by the legislature and published in laws of 1882, pp. 849–862.

4. SAME. *Tariff. Maximum limit. Contract.*

    The provisions of section 19 of said charter authorizing the company to establish and charge rates for the transportation of persons and

property within the maximum limit therein prescribed, constitute a contract between the state and the company, the obligations of which cannot be impaired.

5. SAME. *Supervision.*

The railroad commission may supervise the tariffs of the Gulf & Ship Island Railroad Company, may require the same reports from it as from other railroads, may see that its charges do not exceed the maximum rates provided for in its charter, but has no right to control it within said limits. *Stone* v. *Yazoo, etc., R. R. Co.*, 62 Miss., 607, and *Stone* v. *Natchez, etc., R. R. Co.*, 62 Miss., 646, approved.

FROM the chancery court, first district, of Hinds county.

HON. HENRY C. CONN, Chancellor.

The Mississippi Railroad Commission, appellant, was the complainant in the court below; the railroad company, appellee, was defendant there.   From a decree of the court below, dissolving the preliminary injunction, which had been obtained by the Commission, the complainant appealed to the supreme court. The opinion states the case.   Section 19 of defendant's charter is as follows:

" SEC. 19. *Be it further enacted,* That said company shall have and possess the power of fixing, from time to time, by its board of directors, the rates at which it will do express or telegraph business, and also the rates at which said company will transport persons or property over its railroads and branches; *Provided,* Said last mentioned rates shall not exceed four cents per mile for each passenger, nor exceed the following rates on freights: Sixty-five cents per hundred pounds for transporting first or second-class freights one hundred miles or less; forty-five cents per hundred pounds for transporting third or fourth-class freight one hundred miles or less; thirty-two cents per hundred pounds for transporting fifth or sixth-class freights one hundred miles or less (reference being had herein to the classification of freights now recognized and observed on the existing line between New Orleans and Jackson, Mississippi), but in no case shall the railroad company be limited to a less charge than twenty-five cents for the transportation of any pas-

senger or parcel, or package or article, however short the distance. The rates so established from time to time by the said board of directors for transporting persons or property as a railroad company, not exceeding the maximum rates for said railroad business as above set out, may be charged and collected by said company.''

*Monroe McClurg*, attorney-general, for appellant.

That the tariff of the Gulf & Ship Island Railroad Company of September 3, 1900, is antagonistic to that promulgated by the Commission on September 19, 1890, is not at all controverted. That point must be at once settled in favor of the Commission.

It is respectfully submitted on the part of the Commission that, just as surely as the Gulf & Ship Island Railroad tariff of September 3, 1900, is in direct conflict with that of the Commission of September 19, 1890, just so surely and certainly is it not supported by nor within any reasonable construction of section 19 of the Gulf & Ship Island Railroad Company charter.

It is expressly and affirmatively alleged that the rates fixed by the Gulf & Ship Island Railroad Company on September 3, 1900, and in effect at the date of the Commission's order, both in local and joint rate freights, is a violation of the Commission's order and also a violation of the law. In other words, instead of complying with the Commission's order, it keeps effectual its own tariff rates, which is antagonistic to that order and to all other law on the subject, including the terms of its own charter.

The court will take judicial knowledge of the fact that in 1882 cottonseed were not shipped in carload lots from Jackson, Mississippi, to New Orleans, or *vice versa*, nor to and from intermediate points. That was before the day of oil mills. Nor was cottonseed ever within any of the six figured classes named in the charter. That classification is obsolete, and, in fact, there is serious doubt whether it has been used on any railroad since the date of this charter—never on the Gulf & Ship Island.

.The veritable truth is, that classification is as dead as mummies that have slept undisturbed for centuries.   And more, never at any time did section 19 have legal life and effect, because of its vagueness and uncertainty.   The reference doomed and damned it.

To enjoy the special privileges granted by charter, the grant must be clear, specific and unequivocal, and the corporation must act clearly within the prescribed limits.   Every presumption will be indulged against it.   The court will neither presume nor assume that cottonseed came within the classification of 1882, referred to in section 19.   That is the controlling fact in defense of this particular case, and must be set up in the answer and proven.

The language of § 4286, code of 1892, even without the liberal construction to which it is entitled, is broad enough to give an equity court "jurisdiction to grant aid and relief in such cases"—that is, in cases of enforcing compliance "with the law and lawful orders, decisions and determinations" of the commission, by carrying into effect the powers given the commission to impose fines as well as enforcing the ordinary powers of the court.   When the charter is pleaded and brought properly before the court and the complainant given an opportunity, which it is entitled to have, of replying to it, it is believed that it can be established that cottonseed does not come within the classification fixed in section 19 of the charter.   All of the books hold that a charter granted by a special act of the legislature is not a general law, but private and special legislation; that it was so treated by the legislature of 1882 will be seen by reference to the separate index and the separate publication of the acts of private and special legislation from the general laws.   Reference to its title and date of passage will do, but they must be pleaded.   Code of 1892, § 709; Stephen on Pleading, sec. 347.

Counsel rely on the case of *Georgia, etc., Ry. Co.* v. *Baird;* 76 Miss., 521, where the question was purely one of evidence on

the trial.   Keeping constantly in view the clear distinction between the established rules of pleading and the rules of evidence, it will not be difficult to thoroughly understand the proper application of the decision in that case to the one at bar.   Even if the court should judicially know that the appellee"s charter was granted in 1882, as a matter of evidence it will not judicially know that the company is now, nineteen years later, operating under said charter or fixing its charges for the transportation of cottonseed in accordance with section 19 thereof.   The bill alleges the route of the present appellee's road.   There is nothing in the charter of 1882 to identify this route with the one named in said charter.   Baird's case, 76 Miss., 521; Wade on Notice (2d ed.), 1886; 99 Penn. St., 284; 57 Ala., 26.

It is confidently contended on the part of the Commission that the clause in the latter part of sections 5 and 14 of the defendant's charter, "and to adopt such rules and by-laws for the government of said company as they (not the board of directors, but the company) may deem necessary, not inconsistent with the laws of this state or of the United States," is a reservation by the legislature of power to change, alter or amend the charter.   Not the power to deprive the corporation entirely, except in the manner directed by the constitution, but to limit the power of the company in its government to the will of future legislation.   The court will notice that in the beginning of section 4, the "immediate control and direction of the affairs of said company are vested in the board of directors," and their election and manner of holding business meetings prescribed.   Section 5 deals first with the company, and specifies its general powers, with the above mentioned reservation of power in the legislature to require "all rules and by-laws for the government of the company" to conform to the law.   Just the reverse is true of the Yazoo & Mississippi Valley charter. The limitation in that is not upon the company, but the board of directors (sec. 4).   The distinction is plain and positive, as it is in many other points of comparison of the two charters in

favor of the Yazoo & Mississippi Valley charter.    Section 6 of the latter is broader than section 19 of the appellee's in favoring the railroad, in that it gives the railroad a chance to agree with uninformed shippers of lumber, salt, coal, iron, machinery, etc., and an opportunity to charge them unreasonable and even extravagant rates in spite of the commission.

It is respectfully submitted and earnestly contended on the part of the Commission that the point here invoked and expressly relied upon was not raised in *Stone* v. *Yazoo, etc., R. R. Co.*, 62 Miss., 607.    Strangely enough, nevertheless true, it was never contended in that controversy, and certainly not decided, that the limitation upon the power of the board of directors in adopting by-laws, that those by-laws should be " not inconsistent with the laws of this state."    It is probable that the learned counsel considered that the by-laws for the government of the board of directors did not have the effect of rules for the government of the company in its affairs with the public.    The distinction between " by-laws " and " rules " is clear, but, in view of what is hereinafter said, it is believed that had the point been presented, the court would have held that the rates fixed in section 6 of the Yazoo & Mississippi Valley charter were subject to some supervision and to change by the legislature.    In fact, it appears that the precise point was overlooked entirely, as the authorities hereinafter cited will indicate.

Section 19 of the appellee's charter is not within itself sufficiently clear and indisputable as to be free from legislative change, and most certainly not when viewed in the light of the whole charter.    *Railroad Co.* v. *Smith*, 70 Ga., 694; 126 U. S., 180; 32 Law Ed., 380; 97 U. S., 659; *Dow* v. *Beidelman*, 49 Ark., 325; 5 S. W. Rep., 297; *Rayan* v. *Aiken*, 9 Lea, 617; 42 Am. Rep., 684; *Spring Valley* v. *San Francisco*, 61 Cal., 3.

In *Stone* v. *Farmers' Loan & Trust Co.*, 116 U. S., 330, s. c. 29 Law Ed., 644, it is held that another section of the

charter requiring by-laws to conform to the laws of the state and the United States meant that the railroad might fix rates provided they conformed to the laws of the state. That charter (M. & O. R. R. Co.) was not so broad as the appellee's, but the legal effect of the announcement is the same. On this proposition, see also, *Ruggles* v. *Illinois*, 108 U. S., 531; 27 Law Ed., 815; 91 Ill., 263; *Railroad Co.* v. *Illinois*, 108 U. S., 541; *Dow* v. *Beidelman*, 126 U. S. (Ark.), supra.

The fixing of rates in the charter at most is for the time being, and not forever. *Railroad Co.* v. *Transportation Co.*, 25 W. Va., 361. It is held in this case that grants of character of the appellee's charter are mere licenses, and not irrevocable contracts surrendering forever the sovereign power of the state. *Ga. R. R. Co.* v. *R. R. Commission*, 70 Ga., 694, and the West Virginia case, supra.

*E. J. Bowers* and *McWillie & Thompson*, for appellee.

We contend: (1) That an equity court is without jurisdiction either to grant the injunction or administer the relief; (2) that the bill does not aver that the railroad company is charging more than the rates allowed by its charter, and does not negative the idea that it is within the charter limits; (3) that the order of the railroad commission is void, because a violation of the contract rights of the defendant; (4) that the railroad commission has no authority to make joint rates, and that the making of joint rates at a less sum than straight rates denies the defendant the equal protection of the laws; (5) that the bill and exhibits, taken in connection with the charter of defendant, show that the rates of defendant are within the rates fixed by its charter.

1. On the jurisdictional question we content ourselves with a reference to the following authorities: 2 Elliott on Railroads, 697–699; High on Extraordinary Legal Remedies, secs. 227, 320, 320*a*, 322, 283, 285; High on Injunctions, sec. 20, note 4, and *Attorney-general* v. *Utica Co.*, 2 Johnson's Chancery, 371.

Indeed, the learned attorney-general seems to rest his right to the interposition of the court of equity upon § 4286, code of 1892. We fail to appreciate in what respect this section enlarges the jurisdiction possessed by any of the courts, unless, indeed, there was doubt about the right to institute such proceedings at all and the statute was passed for the purpose of vesting jurisdiction in the proper forum. It has no other effect.

2. It is impossible to read the bill without coming to the conclusion that it is simply a bill to enforce the order of the Commission, and the only grievance or wrong complained of is the violation of the order of the Commission.

It is true that it is charged that the railroad is charging and receiving a greater sum "than is authorized by law or the said rates fixed in the order aforesaid, to wit, both local and joint rates, particularly the following rates, instead of those fixed and promulgated in said order."

The statement that the defendant is charging more than it is by law allowed to charge, is but a conclusion of law, and bad pleading. It is manifest that the violation of the law intended to be charged was the violation resultant from disobedience to the Commission's mandate.

It is a fundamental rule of pleading that wherever an exception is engrafted upon a general statute, or upon a general rule, or where any person possesses any immunity or partial immunity or exemption from the operation of any rule or statute, it is necessary to negative the exemption or immunity, and to negative the facts which go to constitute such exemption or immunity. This the bill does not do.

3. The construction of appellee's charter is settled by the case of *Stone* v. *Yazoo, etc., R. R. Co.*, 62 Miss., 607. The charters of the two companies are identical in terms as to the matter of rates, and the point made by the attorney-general that the by-laws must be consistent with the law of the state, and that the charter of this defendant is to be differentiated

from the charter of the Yazoo & Mississippi Valley Railroad in that respect, falls to the ground upon an inspection of that charter, in which the same provision will be found.    Indeed, if no such section were in either charter, it would be written into them by the force of the common law, for it is inconceivable that a state would permit a corporation to enact by-laws that violated the law of the land.    But while this is true, these provisions in nowise interfere with contracts, and have never been held so to do.    In the very case cited by counsel, *Ruggles* v. *Illinois*, 108 U. S., 526, the supreme court says that the statutory provision that the by-laws should be consistent with the law of the state adds no force to the well recognized common law rule, and that at common law such would have been the rule if the charter had been silent.

It is true that some point is made in the case as to the wording of the charter with reference to the by-laws, but that refers to the peculiar way in which the rates were to be made, for your honors will see that in the opinion the requirement that the tariff should be fixed by by-law is italicized by the court, and the point is specially made that this was the form in which the "power to charge and collect compensation for the carriage of persons and property was granted by the amended charter." Stress seems to be laid on the point that it was to be done by by-laws, as is not the case in the Valley charter or with ours.

By the opening clause of section 19, the company, through any appropriate agency or officer, may fix rates within the limits prescribed, and, while the concluding clause says that the rates so fixed from time to time by the board of directors may be charged and collected, within the limits prescribed, it nowhere prescribes that it shall be done by by-laws, and therefore is not within the reasoning of the case of *Ruggles* v. *Illinois*.    But, if the Ruggles case had all the force that is claimed by the attorney-general, it would be diametrically opposed to the decision of our own court in the case of *Stone* v. *Yazoo, etc., R. R. Co.*, supra, and not binding upon this court.

*Judicial Notice.*—The charter of a railroad company, published in the acts of the legislature and granted by the law-making power, is a public and not a private act. It is an act of local importance and significance, and concerns only the public corporation with which it deals and the territory served by it, but it is public in the sense that it is for a public purpose. Railroad corporations are public corporations, and not private. This is a necessary corollary to the right of supervision, and the supervision by the state stamps the corporation and the act with a public character.

The general rule deducible from the American authorities is to the effect that railroad charters which are granted under general statutes, such as may be granted under the chapter on corporations in the code of 1892, will not be taken judicial notice of by the courts, but when we come to charters of railroads granted directly by the legislature, the general rule is the other way, at least the weight of authority supports the idea that railroad companies are so far public in their nature that the courts will take judicial notice of the provision of the law incorporating them. Wade on Notice, sec. 1404.

In this case it is entirely unnecessary to go into an accurate consideration of all the authorities on the subject, for two reasons:

(*a*) By code 1892, § 709, made applicable to proceedings in the chancery courts by § 629, the charter of the defendant company is pleaded in this cause and is pleaded as a part of the motion to dissolve. The motion refers in terms to the book and page containing the charter, which book gives the complete and perfect title of the act and the date of its passage. Besides the charter of the defendant company is in evidence even if it be defectively pleaded, by virtue of § 1809, code of 1892. It is a general rule that if the grant of a charter is referred to or recognized by a public law, the courts will thereafter take judicial notice of its existence. 1 Morawetz on Corporations, sec. 38. If a private act be recognized by a public statute, it

thereby becomes a public act. Sedgwick on Statutory and Constitutional Law, 34. We find several public acts of the legislature recognizing the Gulf & Ship Island Railroad Company as a corporation. Laws 1884, pp. 26, 965; Laws 1886, p. 73; Laws 1890, pp. 13, 677; Laws 1882, p 131.

(*b*) The supreme court of Mississippi has expressly decided that it "judicially knows that the Georgia Pacific Railroad Company was incorporated in 1882," and that it had certain powers given it by its charter. This point is not brought out in the syllabus to the case, but the opinion nevertheless so holds. *Georgia, etc., R. R. Co.* v. *Baird,* 76 Miss., 524. If judicial knowledge will be taken that one railroad company was incorporated in 1882, such knowledge will be taken of another incorporated in the same year; and if judicial notice be taken of one charter power, like notice will be taken of all charter rights and powers. Besides this, our code, § 1809, has altered the common law rule, and this act is before the court as evidence without being specially pleaded.

Argued orally by *Monroe McClurg,* attorney-general, for appellant, and by *E. J. Bowers, T. A. McWillie,* and *R. H. Thompson,* for appellee.

CALHOON, J., delivered the opinion of the court.

A careful analysis of the bill shows that this is a suit to restrain the Gulf & Ship Island Railroad Company from taking rates of freight on cottonseed in carload lots higher than those fixed by the Railroad Commission, and to recover the penalty of $500 for each overcharge in violation of the order of the Commission prescribing the rates for all railroad companies in the state. We do not think the bill maintainable to recover the penalty, for the reason that a chancery court will not enforce penalties, except under very peculiar circumstances, and such as are not here presented. Section 4286 of the code does not affect the jurisdiction of courts. It merely directs resort to

circuit and chancery courts according to the established juris-
diction of each.    It would seem that it is hardly within legis-
lative power, under our constitution, to authorize bills in chan-
cery for the mere purpose of recovering penalties.

The bill is not maintainable, as we think, to restrain the
company from charging its freight rates, not from want of
power in the court, but because it does not show a violation of
law by defendant, and we must presume it could not, the ob-
ject of the attorney-general being simply to test the lawful
authority of the Railroad Commission to supervise the company
in view of the charter of the latter.    In this case we think we
must take notice of defendant's charter, by which it is empow-
ered to charge its own rates within set limits, and while the bill
avers that these are above those scheduled for all railroads by
order of the Commission, it does not, and doubtless could not,
aver that they are above those authorized by the charter.
True, it avers that the rates are contrary to law, but this is
only a conclusion, and the facts warranting the conclusion are
not set out, and we must, therefore, assume that there is no
charge that the rates exceeded the charter rates because they
did not exceed them.

In response to the claim that the rates are illegal and unau-
thorized because not submitted to and approved by the commis-
sion, it is sufficient to say there is no charge that the rates were
not submitted.    The bill presents itself to us, as in truth it
was, we suppose, solely designed as one to test the right of the
Commission to fix rates for this as for other companies.    In
our judgment the Railroad Commission has the right to see that
appellee keeps within the limits of its chartered rights, but the
bill, in our view of it, does not show that it has exceeded these
rights in the matter complained of.    We refer to the very able
opinions in *Stone* v. *Yazoo, etc., R. R. Co.,* 62 Miss., 607,
and *Stone* v. *Natchez, etc., R. R. Co.,* 62 Miss., 646, for the
law on the subject.

Whether such charter contracts be wise legislation is not for

the courts to say, but they must recognize and support them as they must recognize and uphold all contracts. Whether the Dartmouth College case was rightly or wrongly decided, it is so deeply imbedded at the foundations of American jurisprudence that it must remain *in situ.*

The question of joint tariff rates is not in the case, and we do not feel that we should now comply with the suggestion of counsel by considering and passing upon it. . What was the classification of freight of the railroad company existing at the date of the charter, and referred to in its section 19, we cannot consider. Whether this classification can or cannot affect this case, it is enough to say that it is not shown in the bill that it does or can affect it, and it is not averred that the Commission is not in possession of it, nor is any discovery of it asked for in the bill. Of course, the Commission may require and compel, through the proper courts, the same reports from defendant that it may of any other railroad company, so as to see that it conforms to its charter and to the law as modified by its charter, and the decree is not in prejudice of this right of the Commission.

*Affirmed.*