GULF & S. I. R. Co. v. LAUREL OIL & FERTILIZER Co.

(Division B.   January 14, 1935.)

[158 So. 778.   No. 31376.]

632

(Division B.   February 25, 1935.)

[159 So. 838.   No. 31376.]

634

(Division B.   March 25, 1935.)

[160 So. 564.   No. 31376.]

May, Sanders, McLaurin & Byrd, of Jackson; and Burch, Minor & McKay, of Memphis, Tennessee, for appellant.

Lotterhos & Travis, of Jackson, for appellee.

638

**Ethridge, P. J.,** delivered the opinion of the court.

This is an appeal from a judgment rendered by the circuit court of Hinds county for two thousand three hundred twenty-one dollars and thirty-seven cents, in favor of the appellee, who was plaintiff in the court below, for an alleged overcharge on certain cotton seed shipped over the line of the appellant to the appellee at Laurel, Mississippi.

The plaintiff alleged that the defendant, the Gulf & Ship Island Railroad Company, during the calendar years 1929-30, received from the appellee certain cars, aggregating two hundred seventy-five cars, of cotton seed, as set out in the declaration, upon which rates were paid in excess of that authorized by the railroad commission. A schedule showing all of said shipments, the point of origin, the rate charged, the date delivered to the appellee, plaintiff in the court below, the date of payment, the total freight paid, and the net weight of said shipment, was attached to the declaration as an exhibit.

The declaration charges that on December 3, 1925, the Mississippi Railroad Commission made an order fixing the rates on cotton seed in carload lots between points in the state of Mississippi, to which proceeding the appellant, and all railroads in Mississippi, were parties, and that said order was and is binding upon the appellant, and that it was unlawful for the appellant to charge rates in excess of those fixed by the commission in the order, a copy of which was made an exhibit to the declaration.

The declaration also charges that, by the collecting of more than the amount of freight fixed by the order of the railroad commission, the appellant became liable for the penalty to the plaintiff of one hundred per cent of said overcharge, and prays for a judgment for the amount of the overcharge and for a penalty of one hundred per cent thereon.

The appellant pleaded the general issue, and, in addition thereto, several special pleas.

By plea No. 1, the appellant pleaded the one-year statute of limitations against the penalties claimed by the declaration.

By plea No. 2, the appellant set up the three-year statute of limitations on all shipments made prior to December 23, 1929; the contention being that it applied to the claims for the overcharge.

By plea No. 3, the appellant set up the defense that on the date the order of the Mississippi Railroad Commission, entered in December, 1925, became effective, the appellant was a common carrier operating under a special legislative charter granted by the Legislature of the state of Mississippi in 1882, and that appellant fixed and filed with the Mississippi Railroad Commission its tariff No. H-2011, which was not disapproved by said commission, and therefore it became binding on both the appellee and the appellant, and remained in full force from the date of its filing until long after the shipments in this suit had been made. The plea further alleged that said tariff was never objected to by the appellee or any other person.

To this plea No. 3 a demurrer was interposed and sustained.

By plea No. 4, the appellant reiterated its allegations that its tariff No. H-2011 became and was the lawful tariff applicable to said shipments, and that it was the duty of the appellee to pay the same, and of the appellant to collect said charges so fixed by the said tariff.

The appellee filed replication to this plea, setting up that said tariff was never approved by the Mississippi Railroad Commission, which had, on August 21, 1917, adopted a certain order which prohibited the increasing of existing intrastate rates without submitting such advances to the commission and obtaining its approval.

The appellant demurred to this replication, which demurrer was overruled.

The appellant further pleaded that the order of the commission is void because the Gulf & Ship Island Railroad Company was not a party to the proceedings in which said order was entered, and that no tariff based on said order was ever issued by the appellant.

The appellee demurred to this plea, which demurrer was overruled; and issue was joined in short by consent.

By plea No. 6, the appellant pleaded that the order of the commission sued on and made an exhibit to the declaration is void in so far as same is attempted to be applied to the appellant, because the appellant was, and had been for many years, operating under a special legislative charter granted in 1882, by the terms of which it was authorized to and did fix its rates for the transportation of freight, including cotton seed, and the only jurisdiction the commission has or had on December 3, 1925, over the rates of the Gulf & Ship Island Railroad Company was to require the same to be filed with the commission, and to see that the same did not exceed the rates permitted by the charter, and that said order does not make any finding that the rates then in force were in excess of the rates authorized by the charter.

The appellee demurred to plea No. 6, and the demurrer was sustained.

The case was tried before the circuit judge, in vacation, without a jury, by consent, resulting in a judgment, as above stated.

The first contention of the appellant is that the order of the commission of December 3, 1925, is void, in so far as the Gulf & Ship Island Railroad Company is concerned, because it was not a party to the proceedings in which said order was entered, and no legal process was ever served on it.

It appears that the notice issued by the commission, prior to the order of December 3, 1925, was mailed to J. L. Sheppard, who was then acting as assistant freight agent of the Gulf & Ship Island Railroad Company, and maintained an office in Memphis, Tennessee, he having a like position with the Illinois Central Railroad Company, and the Yazoo & Mississippi Valley Railroad Company, and that he received said notice prior to the meeting of the commission, and that he was in attendance at the meeting at which the order of the railroad commission

was passed, and that he entered appearance for the Illinois Central Railroad Company and the Yazoo & Mississippi Valley Railroad Company at the hearing. Mr. Sheppard stated that it was a part of his duty to attend meetings of the Mississippi Railroad Commission in which railroads were interested; that the Gulf & Ship Island Railroad Company had been leased by the Mississippi Valley Company, which, in turn, was leased by the Illinois Central Railroad Company. The notice and order referred to were styled "Mississippi Railroad Commission v. All Railroads," and the order passed was styled likewise and numbered.

It is insisted that mailing the order to the Gulf & Ship Island Railroad Company to Sheppard was not sufficient notice, under the law, because it was not served upon an officer or mailed to an officer having an office within the state of Mississippi, and that the notice did not comply with section 7033, Code of 1930, and that, inasmuch as no appearance was entered, it did not constitute a notice to the Gulf & Ship Island Railroad Company making it a party to the order above referred to.

Section 7032, Code of 1930, provides that ten days' notice must be given to all railroads or other common carriers of the time and place at which any revision of the tariff of charges or complaint concerning same will be considered. Section 7033, Code of 1930, provides that all notices required to be given shall be sufficiently served and executed upon any railroad or other carrier when deposited, postage paid and properly addressed, in the post office. It provides that it shall be addressed to the railroad or carrier at its principal place of business in this state, if any there be, and, if not, so deposited and addressed in care of an officer, agent, or employee of the railroad or other carrier at an office or place of business in this state, or it may be served upon any such officer, agent, or employee, wherever found by an officer of the

law, and due return thereof made as if it were the process of a court. It will be noticed that this is not a notice in a judicial proceeding, but is a proceeding before the railroad commission in this case affecting the fixing of rates, and strictness is not required in such notices as is required in a judicial action. The object of such a notice and the purpose of the law is to give the railroad or other carrier notice so that it may appear and be heard prior to the time when the rates are to be fixed and established.

We think the statute is directory and not mandatory in so far as the method for serving notice is concerned. Such method is not exclusive, and, if the notice is served in such manner as to get it to the proper officer having charge of the matter before the railroad commission, or the officer whose duty it would be to transmit it to the proper officer, and such notice is actually received by the proper officer of the carrier, it is a sufficient compliance with the statute.

In the case at bar, the officer whose duty it was to represent the railroad at the meeting of the railroad commission, and who had charge of the matter of freight and passenger rates, actually received the notice and appeared and was present and participated in the proceedings. The service of notice, in view of these facts, is sufficient to uphold the jurisdiction so far as the personal appearance of the railroad before the railroad commission is concerned, and the court below committed no error in such respect.

The second contention of the appellant is that the railroad commission had no right, power, or authority, to prescribe rates for the Gulf & Ship Island Railroad Company. This contention is based upon the claim that the charter of the railroad company constituted a contract as to rate-making power; it being contended that the power to make rates for freight and passengers was

conferred by section 19 of chapter 542, Laws of 1882. An examination of this statute shows that, by section 4, the immediate control of the affairs of the company shall be vested in nine directors elected and chosen as provided in section 15 of the same act, to be called the board of directors. By section 15 of the act, it is provided that the corporate powers of said corporation shall be exercised and the business affairs conducted and managed by the persons named therein as corporators who shall be directors for the first year, and until others should be appointed, and that thereafter the directors should be elected annually by the stockholders; that all directors should be stockholders, and every stockholder should be entitled to one vote in person or by proxy, for each share of stock owned by him. The power conferred to make rates is provided in section 19 of the act, which provides as follows: "That said company shall have and possess the power of fixing, from time to time, by its board of directors, the rates at which it will do express or telegraph business, and also the rates at which said company will transport persons or property over its railroads and branches," setting out the different classes of rates, and then providing that, "The rates so established from time to time by the said board of directors, for transporting persons or property as a railroad company, not exceeding the maximum rates for said railroad business as above set out, may be charged and collected by said company."

This rate-making power above quoted constitutes a contract binding upon the Legislature and the public. Stone v. Yazoo & M. V. R. Co., 62 Miss. 607, 52 Am. Rep. 193; Gulf & S. I. R. Co. v. Wirt Adams, State Revenue Agent, 90 Miss. 559, 45 So. 91; Mississippi Railroad Commission v. Gulf & S. I. R. Co., 78 Miss. 750, 29 So. 789.

The question then arises as to how this power shall be exercised and by whom. The power is not one given

to the railroad alone, but the power is given to a board of directors, from time to time, to fix rates at which it will transport persons and property over its lines. It will be seen that the Legislature named the persons who should have the power to fix the rates. The rate-making power is one of the powers of sovereignty, and grants of power in derogation of sovereignty are to be strictly construed against railroads and in favor of the public. Hutchinson on Carriers (3 Ed.), section 574: ". . . It is well settled that it is within the power of the state Legislatures to prevent unjust and unreasonable discrimination by the carriers operating within the state and that, except where the power has been clearly renounced in the charter of the carrier, it is competent for the Legislature to regulate, within reasonable limits, the rates that may be charged by common carriers for the transportation of passengers and property within the state. That the Legislature has deprived itself of the power will not be presumed, and it will only be held to have done so where it appears by 'words of positive grant or words equivalent to law.' And even where the power has been renounced, the state may still supervise the rates charged by the carrier and keep them within the limits of its power."

This power of supervision and to see that the railroad company was kept within its charter powers was recognized in Stone v. Yazoo & M. V. R. Co., 62 Miss. 607, 52 Am. Rep. 193, where it was said that: "It is only where there is an unmistakable manifestation of a purpose to place the unrestricted right in the corporation to determine rates of compensation that the power of the Legislature afterward to interfere can be denied. It is not to be presumed that the right of Legislative control was intended to be renounced. Every presumption is against that. If the grant can be interpreted without ascribing to the Legislature an intent to part with any

power it will be done. Only what is plainly parted with is gone.''

Further on in the opinion the court said: ''The appellee has the unquestionable right from time to time, by its board of directors, to fix the rates at which it will transport over its railroads, provided those rates shall not exceed the maximum prescribed by the charter. That is the contract. These terms were expressly made. . . . While the rates at which the appellee will transport over its roads, not exceeding what is stipulated for in the charter, is for the determination of the appellee and not subject to the control within the chartered limits of the state, it is indisputable that the state may create a commission or board by any name to see that the creature of the state keeps within its charter limits and violates none of its obligations as a common carrier. Whatever the charter rights of the appellee there are many police regulations the state may lawfully adopt, and it may commit their enforcement to any agency of its selection.''

In 59 C. J., section 663, it is said: ''Statutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed, and should not be permitted to divest the state or its government of any of its prerogatives, rights or remedies, unless the intention of the Legislature to effect this object is clearly expressed. It has been pointed out that the rule has been borrowed from the English rule, but the terms used in the rules do not have the same meaning. Among the statutes in derogation of sovereignty are those allowing suits against the state or its representative, conferring sovereign powers upon corporations, or containing exemptions from taxation.''

The doctrine of this state is that powers must be strictly pursued and will not be extended beyond their terms,

and, where a power is given in the nature of a trust, that it cannot be delegated. Learned v. Matthews, 40 Miss. 210; Ready v. Hamm, 46 Miss. 422; Cox v. American, etc., Co., 88 Miss. 88, 40 So. 739; Carey v. Fulmer, 74 Miss. 729, 21 So. 752; Watson v. Perkins, 88 Miss. 64, 40 So. 643; Raymond v. State, 54 Miss. 562, 28 Am. Rep. 382; Potter v. Fid. & Dep. Co., 101 Miss. 823, 58 So. 713; and Loeb v. Board of Trustees (Miss.), 158 So. 333, decided January 7, 1935.

It is clear, we think, that the making of rates by the board of directors, being a power in derogation of the sovereign power of the state, cannot be delegated to others. The Legislature manifestly considered that the board of directors would be a safer depository of this power than some other officers or agents of the corporation, and, in fixing the rates, the board of directors are exercising powers not only for the corporation, but for the public as well. They must and should bring to bear upon it the intelligent judgment and conscientious discretion of all the directors. While this discretion is vested in them, and perhaps their exercise of it could not be controlled by the courts, still it cannot be delegated, because the Legislature conferred it upon the board of directors of the corporation instead of the legal entity.

The railroad commission has the power, under the law, to see that the rates fixed do not exceed those fixed in the statute, section 19, chapter 542, Laws of 1882.

In the case at bar, in 1917, the railroad commission passed an order reciting that: "Whereas, it appears that some of the railroads in this state have put in force rates in advance over rates approved by the commission without having the commission to approve said advance rates, and, whereas, it is for the public interest that all rates especially advance in rates, be approved by the commission prior to their being put in force, it is therefore, ordered that no railroad shall increase any existing Mis-

sissippi intrastate rate without first submitting such advance or new rate to the commission and getting the approval of the commission for such advance rates, and that this order shall apply to all rates now published but not in effect, and such rates shall not go into effect until they have been first approved by the railroad commission by an order entered on its minutes. It is further ordered that a copy of this order be furnished to all railroads operating in this state, and that any railroad company violating the provisions of this order as to intrastate rates shall be fined as provided by law. Ordered this 21st day of August, 1917."

We think this order was within the power of the railroad commission to make, under section 7056, Code of 1930, which provides that: "The railroad commission shall require all the necessary information from such companies, and shall make such reasonable orders for their supervision and regulation from time to time as to their charges and otherwise as the public interest may require."

The Legislature was especially empowered to enact such a statute under section 186 of the Constitution. The railroad commission itself has no power except such as may be conferred upon it by the law, but, by section 186 of the Constitution, the Legislature was authorized to pass laws for the supervision of common carriers, and granted authority to the Legislature to enact statutes within the police power of the state. See discussion in case of Ex parte Fritz, 86 Miss. 210, at pages 220-222, 38 So. 722, 725, 109 Am. St. Rep. 700, wherein the court said: "Power to do them all has been delegated by the Legislature in pursuance of the power given to prescribe other duties than those named in the Constitution to be performed by the board of supervisors. Having been delegated by the Legislature under constitutional warrant, they have become as much a part of the jurisdic-

tion of the board of supervisors as if the power to do them had been expressly and specifically conferred by the Constitution itself.''

While the Railroad Commission has only the powers conferred upon it by statute, yet those powers, when conferred by statute, are to be given a liberal interpretation. In 51 C. J., p. 32, section 71, it is said that: ''A constitutional provision authorizing the Legislature to create a public utility commission is merely a declaration or recognition of the Legislature's inherent authority, and not a grant or limitation of power, and so the rule of exclusion of things not expressed does not apply. Statutes creating and empowering public utility commissions, being essentially remedial in their nature, must be considered in the light of the purpose for which they were enacted, and are to be liberally construed to accomplish their end.''

In the case before us, there was no showing that the rates promulgated, or attempted to be promulgated, were fixed by the board of directors of the carrier. On the contrary, no action of the board of directors could be found upon the minutes of the railroad company. These rates were promulgated by the freight agent or his assistant. After this suit was instituted, a meeting of the board of directors was called, and an attempt was made to ratify and approve the rates promulgated in 1927, by the assistant freight agent. As this meeting and ratification was not consummated until 1933, after the filing of this suit, it is manifest that it could have no retroactive action, although there was an attempt to give it such effect.

There is no showing in the record that the board of directors had ever promulgated any rates, but it appears that these had been made by an agent of the company.

As above shown, the general freight agent of the company had no power to make rates unless approved by the railroad commission, and such rates, if made, were subject

to the control of the commission until, at least, the board of directors had acted.

Under section 7095, Code of 1930, it is the duty of every railroad or common carrier to furnish the commission with its tariff of charges for transporting passengers and freight from point to point within, and from points without to points within, and from points within to points without the state, "and the commission shall revise such of said tariffs as are not subject to the exclusive regulation of congress, and determine whether or not, and in what particular, any of the charges are more than reasonable compensation for the services to be rendered, and whether or not discrimination be made improperly against any person, corporation, or locality; and it shall require the proper corrections to be made; and, when the tariffs have been corrected, the commission shall append to each its certificate of approval; and the commission shall fix and regulate tariffs of charges for all railroads or other common carriers which fail to furnish their tariffs as required."

Under the facts contained in this record, the directors not having promulgated the rates under the charter, the railroad commission had the power to fix the rates, which they did in December, 1925. As the directors did not formulate a tariff of rates, but the same was made up by freight agent of the railroad company, it was necessary to have those rates approved by the railroad commission before they could become effective, and this approval could only be evidenced by entry on the minutes of the commission, and, as this was not done, the rates were not effective, and those promulgated in December, 1925, remained in full force and effect as the lawful rates. When rates are fixed by the board of directors, they should be filed with the railroad commission, and it should appear that they are within the classification and limits of the statute, and approval should be requested and,

if need be, coerced by mandamus or certiorari. Gulf & S. I. R. Co. v. Adams, Rev. Agt., 85 Miss. 772, 38 So. 348.

There are many statutes enacted under the police power of the state, which the state has a right to enact notwithstanding the charter provisions of any corporation. As to such power, see Stone v. Farmers' Loan & Trust Co., 116 U. S. 307, 6 S. Ct. 334, 388, 1191, 29 L. Ed. 636; Stone v. Illinois C. R. Co., 116 U. S. 347, 6 S. Ct. 348, 29 L. Ed. 650, and Stone v. New Orleans & N. E. R. Co., 116 U. S. 352, 6 S. Ct. 349, 391, 29 L. Ed. 651.

We are therefore of the opinion that the rates fixed by the railroad commission were the governing rates, and that the railroad company was liable for the amount of the excess of these rates which it collected.

The defendant in the court below, appellant here, pleaded the one-year statute (Code 1930, section 2301) against the one hundred per cent penalty sued for, and the court sustained its application as to that statute, which we think was correct. The railroad company also pleaded the three-year statute (Code 1930, section 2299) in bar of the amounts collected beyond three years from the filing of the suit. The court held that the six-year statute (Code 1930, section 2292) applied, and allowed a recovery to the extent beyond three years from the filing of the suit. Many authorities are cited both for the appellant and the appellee upon this proposition. We think, however, that the three-year statute was applicable under the decision in the case of Pate Lumber Co. v. Southern R. Co., 115 Miss. 402, 76 So. 481, and the authorities cited therein. That was a suit brought by the Southern Railway Company seeking to recover from Pate certain freight charges alleged to be due on carload shipments of lumber from points in Alabama to points in Illinois, via Columbus. The suit was brought more than three years and less than six years after the charges fell due. The court held that the three-year statute was

the applicable statute and controlled. There is no substantial difference between the case at bar and the Pate case. Here the shipper is seeking to recover from the railroad, and we think the same principles are applicable, and that the Pate case is controlling, and that the court below erred in applying the six-year statute.

The question of liability is affirmed. On the question as to the amount, the judgment is reversed, and judgment rendered here for such items as were collected between the filing of the suit and the three years anterior thereto.

Affirmed in part, and reversed in part.

On Suggestion of Error.

**Ethridge, P. J.,** delivered the opinion of the court on suggestion of error.

The suggestion of error is addressed more to some of the statements in the opinion heretofore rendered (158 So. 778, 781) than to the correctness of the conclusion reached. We will respond thereto and clear up some of the matters suggested.

In the former opinion, we said that Mr. Sheppard stated that the "Gulf & Ship Island Railroad Company had been leased by the Mississippi Valley Company, which, in turn, was leased by the Illinois Central Railroad Company." The statement is inaccurate in that the Mississippi Valley Company was not leased by the Illinois Central Railroad Company, but it owned the stock of the Mississippi Valley Company.

We also said in the opinion: "It is clear, we think, that the making of rates by the board of directors, being a power in derogation of the sovereign power of the state, cannot be delegated to others. The Legislature manifestly considered that the board of directors would be a safer depository of this power than some other officers or agents of the corporation, and, in fixing the rates, the board of directors are exercising powers not only for the

corporation, but for the public as well. They must and should bring to bear upon it the intelligent judgment and conscientious discretion of all the directors. While this discretion is vested in them, and perhaps their exercise of it could not be controlled by the courts, still it cannot be delegated, because the Legislature conferred it upon the board of directors of the corporation instead of the legal entity.''

It is urged that section 4 of the charter provides in reference to the control of the affairs of the company that ''they (board of directors) shall also have power and authority to appoint any three or more of their number an executive committee, to do and perform such act or acts and duties as may be required of them by the by-laws of the company; and the acts or doings of said committee, when done or performed in pursuance of authority conferred upon them, and approved by a quorum of the board, shall be as binding and valid in law as though done and performed by the full board.''

We think this section has reference to the general management and operation of the railroad in its individual corporate action.

Section 19 of the charter provides for the fixing of rates, and we do not think that section 4 authorizes the board of directors to delegate to an executive committee the power to fix rates.

The statement in the opinion above quoted that it must bring to bear upon the matter the intelligent judgment and conscientious discretion of all of the directors is too broad a statement. A majority of the directors may meet and consider rates, and, if such majority approve the rates formulated, that constitutes the action of the board of directors, but we think it requires a majority of the directors to approve a schedule of rates. Of course, they may employ assistants to get information and give them advice and do much of the detail work, but they must,

themselves, determine the making of proper rates within the charter provisions, and not delegate it to an agent of the directors. If this is a hardship, or is difficult, it is a burden that must go with the privilege and right of making rates.

These rates should be certified by the board of directors to the state railroad commission, there to be filed and kept in that office for the public information, and, when so filed, the commission will determine whether the rates come within the grant of the charter, and within the classification referred to in section 19 of the charter, and, if so, then the railroad commission should approve them, making a note of their filing and its approval on the minutes. The railroad commission need not enter the rates upon the minutes of the commission at large then, but should refer to same in some sufficient manner as by number and date, or other description, that would point the public to the rates and where they could be seen.

We also stated in the opinion heretofore rendered that the rates formulated or adopted by the board of directors should be certified to the commission with a request for approval, and, if need be, coerced by mandamus or certiorari. The railroad commission has the power to say whether or not the rates adopted by the board of directors conform to the power and classification provided by section 19 of the charter, and, if they do conform, they should be approved, as above indicated. If, for any reason, the commission should not be of the opinion that the rates do conform to the provisions of section 19 of the charter, the railroad company should either compel by mandamus, or, if a disputed issue, review the matter by certiorari in the proper court. The rates, if correct, would be effective from the date they were filed with the commission.

Formulation or adoption of rates is a matter in which the public has a vital interest, and the judgment of the

directors that the rates conform to said section 19 of the charter is not necessarily conclusive, and, if the rates are beyond the power of the directors, or unauthorized by said section, the state authorities, the railroad commission in the present instance, have the right to refuse to accept them, and to contest the matter in the courts. Likewise, the railroad directors have the right to resort to the courts to determine that question.

Of course, where the directors do not adopt rates in the manner above indicated, the railroad company may still, through agents, submit to the state railroad commission a schedule of rates for approval, and, if approved, the rates will become effective in like manner as if adopted by the board of directors. But, unless formulated and adopted by the board of directors, as above indicated, the state authorities are not compelled to adopt the rates, and, in such case, the railroad commission would have the power to see that proper rates only are made for the guidance of the public.

Where the board of directors of a railroad company act within their charter powers, as herein indicated, they have the right to fix rates within the limits of the authority of their grant.

The suggestion of error is overruled, but the opinion is amended.

Overruled.

ON MOTION TO CORRECT JUDGMENT.

**Ethridge, P. J.,** delivered the opinion of the court on motion to correct judgment.

In entering the judgment heretofore rendered, the clerk allowed interest upon each of the items of freight paid from the date of payment of said overcharge until the date of judgment in this court, and motion is made to correct the judgment. It is contended that interest should

not be allowed prior to the entry of judgment in this court.

Section 7092, Code of 1930, provides that the party injured may recover of the person or corporation guilty of extortion twice the amount of damages sustained by the overcharge or discrimination, as the case may be.

We think the effect of this statute is to give the party damages as there described, exclusive of interest from the date of the overcharge until the date of the judgment. Fidelity & Deposit Co. v. Wilkinson County, 109 Miss. 879, 69 So. 865.

It is a general rule that where a statute gives a specific remedy without saving as to other remedies, that remedy is intended to be exclusive. It is clear that the purpose of the Legislature, in imposing compensation in twice the amount of the overcharge or extortion, was to give an adequate amount of damages to the injured party.

But, in the case at bar, this statutory damage was not sued for within the period of limitation, and, consequently it could not be recovered in this suit which was brought after the limitation provided for the penalty had expired.

It was not the intention to give both interest and double damages, and we think this case is controlled by the case of Fidelity & D. Co. v. Wilkinson County, supra.

We are, however, of the opinion that the interest should be calculated from the date of the judgment in the court below, and not from the date of the judgment in this court. The motion to correct the judgment will therefore be sustained.

Motion sustained.