SELLERS, et ux. *v.* CITY OF JACKSON.

May 10, 1954

No. 39105 64 Adv. S. 34 72 So. 2d 247

*Gore & Gore,* Jackson, for appellants.

*E. W. Stennett, W. T. Neely,* Jackson, for appellee.

APPELLANTS IN REPLY.

*Gore & Gore,* Jackson, for appellants.

*E. W. Stennett, W. T. Neely,* Jackson, for appellee.

ROBERDS, P. J.

This is an appeal from a judgment of the Circuit Court of Hinds County affirming a special improvement street assessment made by the City Council of Jackson, Mississippi, against Lots 15 and 16 of Odeneal Survey,

which lots are owned by appellants. The matter was heard and determined by the trial judge without a jury.

Appellants contend the assessment is void. They strongly urge four grounds in support of that contention.

They first say that the resolutions, orders and proceedings by the City failed to adjudicate the necessary and essential facts to constitute the basis of a legal assessment. The City takes issue as to that but further says that even though there may be defects, appellants, by virtue of their failure to timely ·protest, are estopped to take advantage of them.

This calls for a brief review of the essential steps which have been taken.

The street which was paved is called Lakeland Drive (formerly Peeler Avenue), which begins at the west conjunction of that street with the east line of the Old Canton Road, and runs easterly to within the vicinity of Riverside Park, the exact point of termination not being material to this controversy.

Said property of appellants, according to the City, lies immediately north of and abuts upon said Lakeland Drive.

The property was deeded appellants July 21, 1931, and was described as Lots 15 and 16 of the Odeneal Survey, containing 20 acres.

Peeler Avenue (now Lakeland Drive) formerly belonged to the State of Mississippi, the north line of which, it is claimed by the City, being immediately south of and adjoining the half section line of Section 26, Township 6 North, Range 1 East. In other words, said half section line was the north boundary of said Peeler Avenue. On March 30, 1944, the Legislature of Mississippi, by special act, directed and authorized the State Mineral Lease Commission to convey to the City of Jackson, with some reservations, 313 acres of land for use as a park. It is now known as Riverside Park, and is situated at

the east terminus of Lakeland Drive. The City was obligated to, and it did, pay the State the sum of $50,000 for said conveyance. That instrument also obligated the City to construct a street along what was then known as Peeler Avenue, the street to be not less than 100 feet in width, to connect the Old Canton Road with Riverside Park. Chapter 442, Local and Private Laws 1944, pg. 61. On May 4, 1944, that deed, containing the stated obligations on the part of the grantee, was executed.

On April 9, 1946, the Legislature of Mississippi passed another special act correcting the description in said deed, which correction is not material here. Chapter 395, Laws 1946, page 633.

Plans and specifications for the construction of said street were prepared. They were filed in June 1948. These plans and specifications detailed the width of the street, the various fills, slopes, the kind of materials to be used, and all of the necessary details and specifications for construction of the street.

On June 17, 1948, the City Council, by resolution, adopted said plans and specifications; adjudged the improvement necessary and expressed determination of the Council to construct the street according to said plans and specifications. It recited the work would be done under authority of Section 3673 et seq., Mississippi Code 1942. It adjudged the expense of such construction would be borne by the abutting property owners, and a lien was fixed on the abutting property to pay therefor, on a front footage basis, except that the cost of street intersections, storm sewers, sanitary sewers, installation and adjustment of water mains, and appropriate part of street junctions would be borne by the City. The resolution set July 7, 1948, as date for hearing objections to the plan for such improvements and payment therefor, and ordered the City Clerk to have the resolution published three times, which was done.

On July 7, 1948, the City Council passed a resolution, declaring its intention to proceed with said improvements, setting out the fact of passage of the resolution on June 17th and its due publication. It repeated the necessity of such improvements and the intention to make them in accordance with the plan theretofore set out in the order of June 17th. The order further found that no protest, or objection, had been filed or made to the construction of the street or levy of the special tax for payment thereof. This order also invited submission to the City of competitive bids for constructing the street according to the plans and specifications on file and the orders and resolutions which had been adopted, specifying 10 A. M. August 4, 1948, as the time when such bids should be submitted.

On July 9, 1948, this resolution was duly published. No objection was filed or made to this procedure.

On August 19, 1948, the Council enacted an order adjudging that Dunn Construction Company was the lowest bidder for doing this work; it accepted the bid of that Company, prescribing that the work should be done strictly in accordance with the plans and specifications the Council theretofore had adopted and which had been filed in June, 1948, and authorized and directed the Mayor and the City Clerk to execute proper contract with Dunn Construction Company. These proceedings were also duly published. The contract was executed.

The City enacted proper orders for the issuance by it of bonds for payment of the foregoing, and other street improvements, and instituted proceedings in the chancery court of Hinds County, Mississippi, to have such proposed bonds validated. On March 7, 1950, the proposed bonds were validated by decree of said court. No one contested that proceeding.

On May 3, 1951, the City enacted an order reciting that the work had been completed; that all the improvements had been made; referred to the resolutions which

had been adopted, adjudicating the necessity for making the improvements and assessing the special tax against the abutting lands; that all former proceedings had been duly published, thereby giving notice to all interested landowners of the necessity for making the improvements; that they had been made and paid for, and providing for special assessments against abutting .lands, and that it had been determined that the total cost of construction of Lakeland Drive was $131,627.18, of which the property owners were to pay $111,974.42 and the City would pay $19,652.76, and set May 22, 1951, as the date for hearing objections to the amount of such assessments.

On May 5, 12 and 19, 1951, the foregoing resolution was duly published.

On May 24th the minutes of the Council show that appellants (and some other landowners who did not appeal and who are not before us) requested time to protest the assessment, which request was granted, and June 7, 1951, was set for the hearing of such protest.

On June 7, 1951, appellants filed a written protest against assessment of their property to pay for the street construction.

For various reasons the hearings upon the protest were continued from time to time until June 9, 1952, when the Council adopted an order overruling the protest. The order of the Council denying the protest recited adoptions of all the former resolutions and publications of notice thereof; the execution of the contract with Dunn; performance of the work; issuance of bonds; payment for the work; due publication of notice of all the foregoing proceedings, all without objection until the filing of present protest on June 7, 1951. However, appellants had contended the amount of the assessment against their property had not been figured correctly, and the Council found that to be a fact and reduced the amount of the assessment against the property of appellants. The parties had an agreement that the

reduced amount, $7,073.76, was correct if there was liability for the tax. Protestants appealed to the circuit court. That court, without a jury, affirmed the assessment as made by the Council, and protestants appealed to this Court.

We do not think the contention of appellants now under consideration—that is, that the proceedings of the City Council are insufficient to confer upon the Council power to construct Lakeland Drive and impose a special tax to pay the cost thereof, is well taken.

Sections 3673 and 3674, Mississippi Code of 1942, vest in municipalities the authority and power to make such local improvements "wholly or in part, at the cost of the property owners benefitted thereby, by levying and collecting special assessments hereunder and may finance such local improvements in the manner hereinafter provided". One of the methods provided for financing such improvements is the power to impose a tax on abutting property owners. Section 3677. The method for exercise of the vested power is this:

The governing authority shall adopt a resolution declaring the improvements to be necessary, and its determination to make them, describing the nature and extent of the work, character of materials, the location and terminal of the street, alley, etc., to be constructed, and fix a date for hearing such objections as may be made, and publish notice of such action once each week for three consecutive weeks in a newspaper having a general circulation in the municipality where the work is to be done. "Notice declaring the work necessary shall be notice to the property owners that the work has been declared necessary." "In publishing said resolution, declaring the work necessary, the plans and specifications of said work need not be published but may be referred to as being on file in the office of the city clerk or city engineer". By comparing the requirements of the statutes with the resolutions adopted and notices given in this matter, as shown above, it will

be seen at once the City Council herein amply covered and included every essential necessary to the exercise of its vested power to construct and finance Lakeland Drive. City of Jackson v. Tucker, 136 Miss. 787, 101 So. 708; McClure v. City of Natchez, 151 Miss. 718, 118 So. 615.

In addition to this, appellants are in no position to contest the proceedings of the Council had and done before adoption of the resolution of May 3, 1951. Before that time the Council had determined the necessity for making the improvements, its intention to do so according to plans and specifications on file, setting out the method of financing, the imposition of the tax and lien to secure the payment, the letting of the contract to Dunn, issuance and validation of bonds, completion of the work and payment therefor. All proceedings had been duly published. Appellants had stood by without making any objection. Had they objected any defect of which they now complain could have been corrected. Section 3676 confers the right upon any person aggrieved to appear, in response to notice, and object. "The governing authority shall consider the objections and protests, if any, and may confirm, amend, modify or rescind the objections and protests, if any, and may confirm, amend, modify or rescind the resolution of necessity, and shall determine whether said improvement shall be made and how the cost thereof shall be paid. The determination of such governing authority shall be final and conclusive * * *", but if a majority of the property owners protest the improvement shall not be made. Now, when appellants protested in June, 1951, the only thing then left open and unadjudicated was the correct amount of the tax which each property owner should pay in proportion to his front footage. The amount was lowered as to appellants and there is a stipulation in the record that the sum fixed by the Council was correct. In support of the holding that appellants were estopped by their silence to raise essential questions adjudicated

by the Council prior to the resolution of May 3, 1951, see Bryan v. City of Greenwood, 112 Miss. 718, 73 So. 728; Edwards Hotel Co. v. City of Jackson, 91 Miss. 429, 45 So. 14; Johnson v. City of Meridian, 212 Miss. 323, 54 So. 2d 402.

Appellants further contend, in this connection, that the proceedings are void because of the uncertainty of the scheme under which they were had. Section 3677 provides for assessment against the property "benefited", and directs that the charges against such property, as may be determined by the Council, shall be assessed against the property "abutting upon the improvement, according to the frontage thereof". This procedure seems to contemplate that the street proposed to be improved and the property to be benefited all be within the corporate limits of the municipality. Section 3700 confers power to make the improvements in any street or roadway "which runs along, or forms a boundary of such city, town * * * where the property to the one side of such street, roadway or highway is without the boundaries of the town or city and the property to the other side of the street, roadway or highway is within the boundaries of the town or city in the same manner as if such street, highway, or roadway was entirely within the town or city", in which case as much as, but not more than, fifty per cent of the cost of making the improvement may be assessed against the property adjoining the proposed street or highway "on the side thereof within the town or city", and the cost of the improvement not so assessed against said adjoining property located within the municipality shall be paid by the municipality out of any fund proper for that purpose, or, instead of the municipality paying the same, it may make a contract with the adjoining landowners whose lands are without the municipality to pay their proportion of the cost of such improvement, in which case a lien may be imposed on such adjoining out-of-the-city lands to secure the payment of the tax against

such lands, and, further, in case the street proposed to be improved is a part of any road or highway system "of any road district or county" the municipality may agree with the board of supervisors on the proportion of the tax the county or road district shall pay, the agreement to be spread upon the minutes of the supervisors and municipal governing authority, and the supervisors shall levy a county or road district tax to pay the proportion of the county or road district. As best we can tell, Peeler Avenue and the adjoining property on both sides thereof, when the resolution of June 17, 1948, was adopted, lay within the corporate limits of Jackson, for a distance of about a quarter of a mile beginning at the starting point of Peeler Avenue on the west at the Old Canton Road and extending east, and the remainder of Peeler Avenue, extending east and the adjoining property south thereof were without the municipality, but the property of appellants, which is approximately a half mile east of the Old Canton Road, and which lies north of Peeler Avenue, was within the corporate limits of Jackson. But Peeler Avenue, after getting out of the corporate limits as it extended east, was still the south corporate line of said City. In other words, Peeler Avenue was partly within and partly without the corporate limits, and in front of the property of appellants it, and the property south thereof, were without said limits, but the property of appellant was at all times within such limits, and throughout the entire length of Peeler Avenue the State of Mississippi owned the property adjoining it on the south thereof, and that part of Peeler Avenue which was originally without the city limits constituted the southern boundary of the city limits, including that part of said Avenue immediately south of the property of appellants. Now, the resolution of June 17th and the subsequent resolutions of the Council recite the improvements are to be made under "Section 3673 et seq." of the Code of 1942. That would include Section 3700. On January 19, 1949, the

City adopted an order extending its limits so as to include all of Peeler Avenue and all of the property here involved, which order became final June 30, 1949. Vail v. City of Jackson, 206 Miss. 299, 41 So. 2d 357. So that when this proceeding started Peeler Avenue was partly within and partly without the city limits. In front of the property of appellants it was without the limits. But all the time the State owned the property adjoining Peeler Avenue on the south thereof and during all the time the property of appellants was within the city. Before the final assessment the city had taken into its limits, as above stated, that part of Peeler Avenue and the property adjoining it on the south which was without city limits when this proceeding began.

We do not think the contention now under consideration, that is that the assessment against the property of appellants is invalid and unenforceable—is well taken for these reasons:

The two schemes, the one where the street and property to both sides are within the municipality, and the other, where the street is the boundary and the abutting property to one side is without and that to the other is within the city, are reconcilable. In the first scheme the assessment is against the property "benefited" and "abutting" upon the improvement. Section 3677. In the other the assessment is against the property "adjoining" the improved street. Under the first scheme the statute does not expressly fix a limit of the amount of tax against the abutting owners but the amount is necessarily limited to the cost of the improvements. Under the second scheme the amount of tax which may be levied against property owners adjoining either side of the street is limited to fifty per cent of the cost, but this limit, including the property on both sides, extends to the total cost of the improvements. The proceeding here assessed the tax fifty per cent against adjoining, or abutting, property owners on either side of the im-

proved street after deducting the part the city was to pay. The published proceedings fully informed appellants the plan proposed by the Council as to the property of appellants.

■■ It will be noted that when this proceeding was begun, which is the time at which its legality would be tested, Peeler Avenue in front of appellants' property was without the city; the adjoining property of appellants was within, and the property of the State south of Peeler Avenue was without, the city limits; therefore, the plan adopted by the municipality of assessing adjoining property on either side of the Avenue with fifty per cent of the cost (except that to be paid by the City) was the appropriate method for constructing the improvements and levying the tax.

■■ Appellants say that Peeler Avenue and all the property here involved adjoining on the south thereof belonged to the State and the City had neither power to construct a street on that Avenue nor to tax the property of the State to pay for the same. A complete answer to that contention is the State conveyed an easement to the City for that express purpose, thereby consenting to the construction of the street, and has paid its part of the assessment—$41,070.77. Appellants are in no position to complain on behalf of the State. Their property was assessed with only one-half of the improvement chargeable to the adjoining landowners. The city has worked out an arrangement for payment of the other fifty per cent against the property south of the street.

Again, if there be confusion in the methods adopted here under the peculiar circumstances of this case (jurisdictional facts being adjudicated, as was done), the confusion could have been cleared up had appellants timely contested the proceeding on that ground.

The property of appellants was charged with the sum of $400.40 as their proportionate share of the cost of engineering charges for surveys and preparation of plans

and specifications for the construction of Lakeland Drive, and for supervision and inspection and final acceptance of the work done by the contractor. It is agreed the amount is correct but appellants deny it is a proper charge. The enumerated services were performed by the regular engineers of the City, who were paid a fixed salary out of the general fund. The contention has given us much concern. It is a matter, we think, of construction of our statute. Section 3678, Code 1942, reads in part as follows: "The governing authority of such municipality shall have power to pay out of its general fund, or out of any special fund that may be provided for that purpose, such portion of the cost of the proposed improvement as it may deem proper. Interest accrued while an improvement is under construction, and for six months thereafter, shall be deemed a part of the cost of the improvement. Actual engineering and inspection costs, properly chargeable to any improvement, shall be deemed a part of the cost of the improvement." Of course, surveys, preparation of plans and specifications, inspection and final acceptance of the work to see that the contractor complied with his contract were necessary functions, requiring a high degree of skill. These services had to be performed by someone possessing the necessary knowledge and skill. It may be fairly assumed, we think, that the cost of a competent engineer especially engaged would naturally be more than that properly attributable to the regular engineer, and the adjoining property owners get the benefit of the reduced charges for the work of the regular engineer. It is not questioned the Council had the power to engage a special engineer for this work alone and apportion that to the abutting owners as a part of the construction cost. Too, if the regular engineer is to make surveys for, prepare plans and specifications of, and supervise and inspect, all special improvements, without benefited property owners being charged with any of the cost, then such

owners are reaping a large benefit at the expense of the general taxpayers. That special work no doubt requires a much larger regular engineering force than would be needed if special engineers were to be employed on every special improvement job. We believe economy and efficiency bear heavily in favor of the conclusion that the statute contemplates a fair and reasonable charge against the benefited property for such engineering service. It will be noted, too, that said Section 3678 expressly authorizes the municipality to pay out of the general fund, or any special fund provided for that purpose, such proportion of the cost of the special improvement as it may deem proper, the adjoining owners thereby getting the benefit of such payment. And in this case the City is paying the sum of $19,652.76. ▮▮▮ We conclude, therefore, that said Section 3678 authorizes a proper, reasonable, and proportionate charge against the respective abutting property owners for engineering and inspection costs as a part of the cost of the improvement.

Appellants next urge, as their main contention on this appeal, that as a fact their property does not abut or adjoin Lakeland Drive, and, therefore, is not assessable. The half section line of Section 26 was supposed to be the north line of Peeler Avenue, and supposedly the south line of appellants' property was the half section line, and, therefore, the north line of Lakeland Drive after its construction. Appellants' case on this point rests upon the testimony of Mr. M. H. Keele. He was an engineer and he made a survey to determine whether appellants' property adjoined or abutted upon the north line of Lakeland Drive. He did say that, according to his conclusion, after making this survey, there was a space between the south line of appellants' property and the north line of Lakeland Drive of 4.06 feet at one place and 14.06 feet at another place and 2.08 feet at another and 14.08 feet at another. He made his survey from certain iron stobs. He did not know whether these stobs

were placed as a result of a survey. But the weight of his testimony was greatly lessened by other parts thereof. He was asked whether the south line of Lots 16, 19 and 20 (the latter two lying immediately west of Lot 16, the property of appellants), according to Odeneal's Survey, would ultimately cross the half section line, and he replied "I don't know, sir. It runs in a general direction; that this dividing line is between the north and south half of the section, but I don't know where that half section line is." Referring to the plans and specifications for construction of Lakeland Drive he said "So far as I can tell on these plans you have accepted the north line of Lakeland Drive as being the south line of these property owners." Again, "I will state that this set of plans you have shown on here that those people abut the street." Odeneal's Survey of the property in this vicinity was made in 1928. Mr. Keele was asked, concerning that survey, if the south line of Lots 16 and 19 was the dividing line of Section 26, and he replied, "If he had surveyed and platted it correctly, according to his description, then that would be the line dividing the north and south half of the section." We find no proof that Odeneal's Survey was not correct.

The proof of the City, on the question of fact, rests upon record testimony and the oral testimony of Mr. C. E. McMillan based upon his survey and his interpretation of certain plats, including that made by Odeneal.

As to the records, the descriptions in the deed from the State conveying the City an easement to construct Lakeland Drive; and in the deed from the State to Riverside Park, obligating the City to construct Lakeland Drive, and in the Special Acts of the Legislature (Local and Private Laws, 1944, pg. 61; Chapter 395, Laws of 1946, pg. 633) authorizing execution of the deed to Riverside Park, all, as we construe them, place the north line of Peeler Avenue along the dividing line between the

north and south half of said Section 26 in front of appellants' property.

Mr. C. E. McMillan was the city engineer. He testified. He prepared the plans and specifications for constructing Lakeland Drive. He made the survey for that purpose. He testified from his surveys and from the maps and plats which had been introduced in evidence. Time and again he made the positive statement that the south line of appellants' property abutted upon the north line of Lakeland Drive. He said, "Yes, sir, it is the same line." Again, "The north line of Lakeland Drive is the same line as Lot 19, the same as the deed is." Lot 19 lies immediately west of the property of appellants and has the same south boundary line. He was asked "What is it with reference to Lot 16 of the Odeneal Survey? A. It is the same line of the south property line of Odeneal's Subdivision. Q. What is it with reference to the half section line of the north half and south half of Section 26? A. It is the same line. Q. Those plans show that, do they? A. Yes, sir." He was shown a map or plat made by the associate of Mr. Keele. He was asked where that plat located Peeler Avenue and he said "Just south of the half section line." He said it shows the south line of the property of appellants to adjoin or abut the north line of Lakeland Drive. In addition, he testified that in the actual construction of Lakeland Drive, in grading slopes and making fills, the street construction actually ran several feet over onto the adjoining property of appellants in a number of places. ▮▮▮ From this it is readily seen that whether appellants' property actually abutted upon, or adjoined, the north boundary line of Lakeland Drive was a question of fact for the trial judge.

Affirmed.

All Justices concur except *McGehee, C. J.*, and *Holmes, J.*, who dissent in part.

————

HOLMES, J., dissenting in part.

I am unable to subscribe to the majority view that engineering and inspection costs were properly chargeable to the appellants. The right of the City to assess to the appellants a proportionate share of engineering and inspection costs must be found in Section 3678 of the Mississippi Code of 1942, the pertinent parts of which are as follows:

"The governing authority of such municipality shall have power to pay out of its general fund, or out of any special fund that may be provided for that purpose, such portion of the cost of the proposed improvement as it may deem proper. Interest accrued while an improvement is under construction, and for six months thereafter, shall be deemed part of the cost of the improvement. Actual engineering and inspection costs, properly chargeable to any improvement, shall be deemed a part of the cost of the improvement."

Since the right of the City to include engineering and inspection costs as a part of the total cost of the improvement is governed wholly by the foregoing statute, we are concerned only with the proper construction to be given the statute, and not with authorities generally which may deal with other and different statutes.

As I view this statute, it contemplates as a part of the total cost of the improvement only such engineering costs as have been *actually* incurred in the improvement project and not a sum estimated as the reasonable value of necessary engineering and inspection costs for the project. The language employed in the statute is "actual engineering and inspection costs."

Ballentine's Law Dictionary, second edition, gives the following definition of the word *actual*: "That which is actual is something real, or actually existing, as opposed to something merely possible, or to something which is presumptive or constructive."

Webster's International Dictionary, second edition, gives the following definition of the word *actual*: "In fact, real; that which exists in fact; a reality." The same dictionary defines the word *actual* as used in the field of finance as follows: "Something actually received; real, as distinct from estimated receipts."

Webster's International Dictionary, second edition, gives the following definition of the word *cost*: "That which has involved expense."

Black's Law Dictionary, second edition, defines the phrase *actual cost* as follows: "The actual price paid for goods by a party in the case of a real bona fide purchase, and not the market value of the goods."

There were no actual engineering and inspection costs incurred or paid in connection with the improvement here in question. This clearly appears from the following stipulation of the parties: "That the engineering services, for which a part of the assessment appealed from is to pay, were performed by regular city engineers who worked for regular salaries, which salaries were paid out of the general fund of the city and into which general fund has been covered the amount of said assessment set up for engineering and inspection costs."

I think if the legislature had intended to provide that a reasonable value of necessary engineering services may be included in the total cost of the improvement, even where the services are performed by the regularly employed city engineer at no additional expense, it would have said so. The language of the statute is plain and unambiguous. It provides that only the *actual* engineering and inspection *costs* may be included in the total cost of the improvement. Here there were no actual costs for

engineering services. The services were performed by the regularly employed city engineer who was paid his regular salary and no actual costs for engineering services were incurred or expended.

In the case of First National Bank of Memphis v. State Tax Commission, 210 Miss. 590, 49 So. 2d 410, we held that where the language of a statute is plain and unambiguous, the legislature must be deemed to have intended what it has clearly expressed. In the case of City of Hazlehurst v. Mayes, 96 Miss. 656, 51 So. 890, 891, the Court, referring to a statute, said: "It is plain and unambiguous as it is. It is not within the province of this Court to add to the law as the legislature has written it."

Again in the case of Wilson v. Yazoo & Miss. Valley Railroad Company, 192 Miss. 424, 6 So. 2d 313, 314, the Court said: "No principle is more firmly established or rests on more secure foundations than the rule which declares that when the law is plain and unambiguous, whether it be expressed in general or limited terms, that the legislature shall be deemed to have intended what they have plainly expressed, and, consequently no room is left for construction in the application of such a law.

In the case of Hamner v. Yazoo Delta Lumber Co., 100 Miss. 349, 56 So. 466, 490, the Court aptly said: "The courts have no right to add anything to or take anything from a statute, where the language is plain and unambiguous. To do so would be intrenching upon the power of the Legislature. Neither have the courts authority to write into the statute something which the Legislature did not itself write therein, nor can they ingraft upon it any exception not done by the lawmaking department of the government. Whenever the judiciary shall undertake to violate these rules—indeed, we may say maxims —then it is guilty of usurpation in its most obnoxious form; and the courts dare not do this lest they destroy their own usefulness and power."

It seems clear to me that under the plain language of the statute, the City was only authorized to include in the total cost of the improvements such engineering and inspection costs as were actual, that is to say, actually incurred or expended on the project. It is conceded here under the stipulation of counsel that no such costs were incurred or expended.

It is my view, therefore, expressed with deference, that the inclusion of engineering and inspection costs in the assessment made against the appellants was unauthorized, and should be eliminated from the assessment, and to the extent of the view of the majority to the contrary I respectfully dissent therefrom.

I am authorized to say that *Chief Justice McGehee* joins in this dissent.

---

ON MOTION TO CORRECT JUDGMENT

Oct. 25, 1954 75 So. 2d 265

ETHRIDGE, J.

On May 10, 1954, this Court affirmed the City of Jackson's assessment of appellants' property, and therefore affirmed the decision of the circuit court which had sustained the city council's assessment. Sellers v. City of Jackson, 72 So. 2d 247. The circuit court's judgment provided that the assessment for special improvements in the sum of $7,073.76 was confirmed. It further adjudged that the City recover from appellants and the surety on their appeal bond the sum of $707.38, "representing the statutory damages" as provided by Code Section 1196. That statute states that, in appeals to the circuit court from the assessment of taxes, where the assessment is affirmed, "judgment shall be rendered on the appeal bond for damages at the rate of ten percent on the amount in controversy and all costs."

This Court, in sustaining the judgment of the circuit court, expressly adjudicated that appellee should recover from appellants and their surety the sum of $35.37, being the statutory five percent damages created by Code of

1942, Sec. 1971, which provides that on appeals to the Supreme Court: "In case the judgment or decree of the court below be affirmed, or the appellant fail to prosecute his appeal to effect the Supreme Court *shall* render judgment against the appellant, at the rate of five per centum and costs, as follows: If the judgment or decree affirmed be for a sum of money, the damages *shall* be upon such sum. . . ." (Emphasis supplied.) The statute is mandatory and makes no exception in case the judgment appealed from is for a penalty; it is universal and all-inclusive, and we cannot engraft exceptions to the express mandate of the legislature. Neither the ten percent damages awarded in the lower court nor the five percent provided by the statute for an unsuccessful appeal to the Supreme Court can be considered a penalty. Both statutes specifically refer to these awards as damages, and the word "penalty" is not to be found in either statute. The awards therein are for damages for an unsuccessful appeal.

Claughton v. Ford, 202 Miss. 361, 369, 32 So. 2d 751 (1947), is controlling here. It was there said: "The appellant raises two objections to this motion (1) . . . and (2) to allow this statutory damage would be to allow double damages. . . . The appellant's double damage claim is based on the theory that the double rent allowed a landlord against a tenant holding over is the sole measure of the landlord's damage therefor and excludes the award of this statutory damage. In this the appellant is in error." See also Firestone Tire & Rubber Co. v. Fried, 202 Miss. 370, 382, 31 So. 2d 116, suggestion of error overruled in 32 So. 2d 454 (1947); Conn v. Brashears, 38 So. 2d 907 (Miss. 1949).

The motion to correct judgment also requests that the judgment shall provide that there shall be no interest on the circuit court judgment. Code Sec. 39 provides: "All judgments and decrees founded on any contract, shall bear interest, after the rate of the debt on which the

judgment or decree was rendered. *All other judgments and decrees* shall bear interest at the rate of six per centum per annum." (Emphasis added.) The judgments of the circuit court and this Court are silent as to interest, but appellee asserts it is entitled to it under the statute.

It will be noted that Sec. 39 expressly provides that "all other judgments . . . shall bear interest at the rate of six per centum per annum." The statute is clear and categorical, and the judgment in the circuit court in the present case comes within its terms. So we think that the trial court's judgment must bear interest under Sec. 39 from its date until paid. Fidelity & Deposit Co. of Maryland v. Wilkinson County, 109 Miss. 879, 69 So. 865 (1915), is consistent with this result, because in that case the bank statute involved expressly provided that, where a county depository after demand delays payment over of county funds, damages shall run on those funds until paid at the rate of one percent per month for such delay. The statute therefore fixed a charge in the nature of interest for such withholding at twelve percent a year until paid, and it was held that interest under Sec. 39 would not apply, since presumably this statutory interest provided for such particular cases was in lieu of any other interest. Compare Gulf & S. I. R. Co. v. Laurel Oil & Fertilizer Co., 172 Miss. 630, 658, 158 So. 778 (1935). We think that Code Sec. 39 expressly makes interest applicable to a judgment of this type, and there is no evidence of any legislative intent to the contrary in the terms of the statutes. Hence the circuit court's judgment bears interest at the statutory rate.

The motion of appellants to correct judgment is therefore overruled.

Motion to correct judgment overruled.

*Hall, Lee, Kyle, Arrington* and *Gillespie, JJ.,* concur.

HOLMES, J., dissenting:

I respectfully dissent from the decision of the majority in overruling the motion of the appellants to correct the judgment in this case, and in thus allowing the assessment of five per centum damages and six per centum interest on the amount of the statutory damages imposed by Section 1196 of the Mississippi Code of 1942.

It is my view that both the five per centum damages and the six per centum interest should be disallowed under the authority of the decision of this Court in the case of Fidelity and Deposit Company of Maryland, et al. v. Wilkinson County, 109 Miss. 879, 69 So. 865. In that case, the Court had under review Section 10, Chapter 194, Mississippi Laws of 1912, providing that a depository ''shall be liable for damages at the rate of one per centum per month for any delay in paying over any county funds when lawfully demanded.'' The damages so provided are manifestly in the nature of a penalty for delay. It was sought in that case to assess the depository with six per centum interest in addition to the penalty of one per centum per month. The court held in that case that the penalty of one per centum per month for delay in paying over was in lieu of all other *interest* or *damages*. The Court said: ''But we are of the opinion that the provision in Section 10 of the statute providing for the payment by a depository of 'damages at the rate of one per cent per month for any delay in paying over any county funds when lawfully demanded' is in lieu of all other interest or damages, except attorney's fees, for which such depository may be held liable after default in payment.''

In the instant case the circuit court approved the assessment and applied to the amount thereof ten per centum of the amount of the assessment under the provisions of Section 1196 of the Mississippi Code of 1942.

The question is not here presented as to the applicability of said Section 1196 to assessments for special im-

provements as contrasted with assessments for general taxation, and I reserve any opinion thereon.

The real controversy involved was the validity and amount of the assessment. The court decided this controversy against the appellants and entered judgment approving the assessment. The application of the ten per centum damages which are manifestly in the nature of a penalty was but an incident to the approval of the assessment. Whether that penalty would be more or less depended upon the final determination by this Court of the validity and amount of the assessment. Certainly the legislature never contemplated that upon the final approval of the assessment and the application of the ten per centum penalty, there would be assessed on this penalty an additional penalty of five per centum and six per centum interest. To so hold would be to assess the appellants with a penalty upon a penalty for exercising their right to have the validity and amount of the assessment adjudicated in the courts. Certainly such a result was never contemplated by the legislature. A statute must be given a reasonable interpretation and when the statute here in question is so interpreted, it is manifest that the ten per centum penalty provided in Section 1196, supra, was intended by the legislature to be in lieu of all other *interest* or *damages* just as was held in the analogous case of Fidelity and Deposit Company v. Wilkinson County, supra.

The majority rely upon what they call the mandatory provisions of Code Section 39 and Code Section 1971. Nevertheless, these statutes were in force when the Wilkinson County case was decided, and yet the Court refused to give effect to them in construing the statute there under review. Likewise, no effect should be given to them in the analogous case now before us.

It is accordingly my humble opinion, expressed with deference, that the decision of the majority does violence

to the Wilkinson County case, and that under the authority of that case the appellants' motion to correct the judgment should be sustained.

ROBERDS, P. J., dissenting in part:

I do not think the statutes impose a penalty upon a penalty. To that extent I disagree with the majority opinion. These so-called damage imposition statutes are highly penal whether designated damage or penalty statutes. They should be construed strictly. A logical rule of construction, I think, would announce that where a special penalty is imposed by a particular statute, applicable to the peculiar circumstances to which the statute is directed, as, for instance, Section 1196 imposing a penalty of ten percent for nonpayment of taxes, needed for support of the government, the penalty of five percent imposed generally by Section 1971 should not apply. The special statutes carry their own penalties. That, I think, would be a reasonable construction of all pari materia statutes. Two penalties should follow only a clear mandate of the Legislature.

*McGehee, C. J.*, joins in this dissent in part.